MARY A. R. WADE *et al.*, Appellants, *v.* NICHOLAS KING *et al.*, Appellees.

APPEAL FROM MORGAN.

Depositions in a former suit (in chancery) between the same parties, involving the same questions, are admissible as evidence, where the questions are again presented for judicial decision, if the parties interested had an opportunity of testing the truth of the testimony.

And this, although the parties are not identical, and although there may not be complete mutuality, in respect to their relation to each other, or to the subject matter litigated, if the same matter is in issue in both cases.

IN January, 1851, Nicholas King exhibited his bill in chancery, in the Circuit Court of Morgan county, for settlement of partnership accounts, and establishment of his title to lands in Iowa, against the personal representatives and heirs at law of his deceased brothers, Joseph King and William King, claiming that he was interested in the subject matters of the suit to the extent of three-fifths, and the estates of his said brothers each one-fifth, as partners. On appeal to the Supreme Court, the claims of the bill were substantially vindicated at the December term, 1854, and the cause was remanded, with instructions to proceed in conformity with the opinion of said court.

Pursuant to the directions of the said court, the master prepared a report in the cause, allowing the aforesaid interests in

the lands, and charging representatives of William King to Nicholas King, $3,410.72; representatives of William King to representatives of Joseph King, $889.45, and representatives of Joseph King to Nicholas King, $742.38. In that form, on the first day of the October Term, 1845, of the Circuit Court of Morgan county, the report was submitted by the master to the defendant, William Thomas, representing the representatives of William King; and thereupon, the said William Thomas submitted an account, stated in his own hand-writing, (excepting signature of John Peter, surviving executor of Joseph King,) as follows:

WILLIAM KING, *Executor of* JOSEPH KING,

*To the Estate of said* JOSEPH, DR.

| | |
|---|---:|
| To cash received of said estate, - - - - - - $2,281 10 | |
| To interest collected, - - - - - - - 325 60 | |
| | $2,606 70 |

CONTRA — CR.

| | |
|---|---:|
| By cash paid out as allowed by Court of Probate, Greene county, - - - - - - - - $606 99 | |
| By amount accounted for to John Peter, surviving executor, by John C. Hamilton, administrator, etc., - 2,004 50 | |
| | $2,611 49 |
| Balance due William King's estate, - - - | $4 79 |

The foregoing account, settled as above, April, 1852, signed "John Peter, surviving executor of Joseph King," to the master, without the knowledge or consent of the representatives of the said Joseph King, deceased, or any one duly representing them, and procured such a modification of said report as that the representatives of the said William King, deceased, were to respond to the said Nicholas King for balance due him from the representatives of the said Joseph King, deceased, and excluding them altogether from any share in the aforesaid partnership interests, and investing the representatives of the said William King, deceased, with the interest of the representatives of said Joseph King, deceased, in the Iowa lands. Bill charges that said William Thomas submitted account, as above, in fraud or ignorance of complainants' rights, and with fraudulent or mistaken intimation on his part that it was a settlement between the representatives of the said William King, deceased, and Joseph King, of subject matters of partnership account, as stated by master, before it was modified by him. Complainants charge that William Thomas did what he did in the premises in ignorance of their rights, and out of blind, overweening devo-

tion to the interests of the representatives of said William King, deceased.

On the basis of said modified statement of account, decree was rendered 17th of October, 1855, by the Circuit Court of Morgan, and for sale of the title of the parties to the suit to the Iowa lands, by said William Thomas and David A. Smith, as trustees; net proceeds of sale to be paid—three-fifths to Nicholas King, and two-fifths to the representatives of the said William King, deceased, with the following reservation in decree, suggested by the said David A. Smith: "Saving and reserving to the representatives of the estate of said Joseph King, deceased, as between them and the representatives of the estate of William King, deceased, the right to show that they, the representatives of the estate of said Joseph King, deceased, are entitled to the net proceeds of sale of one-fifth of said lands," and decree is referred to as part of bill.

Bill states that said William Thomas and David A. Smith, as trustees, sold lands on terms of decree for $19,390.59, and had in hand, for distribution, net] sum of $6,201.99, to one-fifth of which complainants were entitled, as also deferred installments; and that William Thomas, to exclusive use of representatives of William King, deceased, had invested, at ten per cent. interest, $2,480.80; excluding complainants from any interest in the same, when they were entitled to one-half of the same, and interest thereon to accrue.

Complainants protest against their exclusion from any interest in the proceeds of sale of Iowa lands, in virtue of the assumpsit of the representatives of William King, deceased, in decree, to pay for them (complainants) $742.38, the partnership balance against them, in favor of Nicholas King, and say that they are willing to pay same on their own account, and that they have not compromitted or forfeited, in any way, their right to net proceeds of one-fifth of sale of Iowa land, and so they ask the court to decree.

On the 28th June, 1843, Nicholas King, from York, in England, remitted by the hand of William King, to Joseph King, a certain sum of money, and took following receipt:

Received of brother Nicholas the sum of £471 6 6, belonging to brother Joseph, to deliver to him, but at his risk, in case of accidents.

*York, June* 28, '43.                                         WILLIAM KING.

Complainants charge that the item of $2,281.10, in account above, is no other than a commutation into federal money of the aforesaid sum of sterling money; and that by the employment as the basis of that account of what rightly belonged to the

estate of Joseph King, deceased, the representatives of that estate have been wrongfully ousted of their right to one-fifth of proceeds of sale of Iowa lands.

Bill charges that said sum of sterling money was brought from England to this country by the said William King, at or about the time that the said Joseph King was on his death-bed, and that said William King never paid any part of the same to the said Joseph King; and that the said William King, after the death of the said Joseph King, had and held the said sum of money as the executor of the last will and testament of the said Joseph King, deceased, and as testamentary guardian of his children; and that what remained of said sum of money to be accounted for by the estate of the said William King, deceased, after his death, in notes and mortgages in kind, in the name and to the use of the representatives of the estate of the said Joseph King, deceased, were handed over by Rachel King, widow of said William King, deceased, after his death, to the said John Peter, as surviving executor of the last will and testament of said Joseph King, deceased, and testamentary guardian of the children of said deceased; and that the account copied above is, and was intended to be a mere voucher of that transaction; and that the said John C. Hamilton, administrator as aforesaid, never had any settlement with the said John Peter, as executor as aforesaid, of any of the partnership transactions.

Complainants refer to a copy of the last will and testament of said Joseph King, deceased; state that William King and John Peter were executors and testamentary guardians; that William King acted until 1846, when he died; that complainants are exclusively interested in any decree which may be rendered in the cause, (John Peter having finally settled his accounts,) and ask decree for the $889.45, with six per cent. interest since 17th October, 1855. Bill then names defendants, and prays process against them, and that adult defendants be required to answer on oath—John C. Hamilton, William Thomas and John Peter, to answer special interrogatories as to the account, April, 1852.

Complainants charge that their interest of one-fifth in Iowa lands accrued from the employment of partnership or trust funds, by William King, deceased, in the purchase of the same; which partnership was referred to in a paper signed by William King and Nicholas King, and brought from England by said William King, for the signature of the said Joseph King, but which was never had, because of his being on his death-bed at the time of return of said William King; and that said paper was declarative of transactions that had been had many years

before, and had reference to the further settlement of said transactions, on the principles of trust and partnership.

Complainants state that trustees reported sale of Iowa lands to Circuit Court of Morgan, October term, 1856, which was approved—saving and reserving rights of complainants, as by decree October term, 1855; and that trustees had divided notes for deferred installments—three-fifths to Nicholas King, and two-fifths to representatives of estate of William King, deceased, reserving rights of complainants. That J. C. Hamilton had fully administered and settled up estate of William King, deceased; and that William Thomas was in funds on account of the representatives of the estate of William King, deceased, to pay any decree that may be had in this case. Bill prays for specific relief indicated in it, or for alternative general relief; and concludes by stating that not until September last, (1856,) through the professional assistance of one of their solicitors in the case, did the complainants become apprised of the state of facts in this bill. Thereupon they exhibited and filed in said case of *Nicholas King* v. *J. C. Hamilton et al.*, a cross bill, seeking the relief which they herein ask, which, on motion of said William Thomas and others, was dismissed as filed too late, at the last term of this court, without prejudice to the rights of the parties.

Admits that Nicholas King, William King and Joseph King, as partners, in 1829, invested £1,000 sterling money, in purchase of lands in Morgan county, and in farming—three-fifths supplied by Nicholas King, one-fifth by Joseph King, and one-fifth by William King. Purchases in name of Nicholas King, who returned to England in January, 1831, by power of attorney, committing trust property, sale of lands, etc., to William King and Joseph King. In March, 1830, $400 worth of land sold to Waggoner, and money applied by Joseph King to his individual purposes. In May, 1831, he sold thirty-two cattle for $374, and in May, 1835, $512 worth of cattle, property of parties. In 1839 William King sold part of land to Strawn for $2,400, and in 1846, land to Richardson for $808; the remainder of lands sold at auction, and proceeds properly distributed. Defendants do not know that any evidence existed prior to 1851 as to extent of partnership interests in aforesaid lands, except paper of 27th June, 1843, referred to in bill. Proceedings of Nicholas King, as alleged in bill, admitted, except that there was never any decree of any court in favor of complainants, for any part or share of Iowa lands. In 1846 William King purchased them in his own name, and, as defendants believe, with his own funds, and for his own use, not investing or intending to invest any trust funds, and deny that lands were purchased

with trust funds. Say that complainants (other than Wade) were fully advised in regard to the matters in controversy in suit of Nicholas King, during pendency, and did not assert any claim to lands in Iowa—because, as defendants believe, they did not believe that either they or Nicholas King were entitled to any part thereof. The sales of lands to Waggoner, Strawn and Richardson amounted to $3,995, one-fifth of which, $799, Joseph King and his heirs were entitled to, he having received $1,286; that he received more than his proportion of sale and rents of lands realized before his death, and was indebted to trust fund. The proceeds of sale to Richardson, in 1846, being divided according to the rights of the parties, would entitle the estate of Joseph King to credit of $161.60. Defendants deny that any question was made by the pleadings in the suit, by Nicholas King, as to the investment of trust funds to the use of Joseph King or his heirs, in the purchase of Iowa lands, or that any testimony was taken in the cause with reference to the state of accounts between the estates of Joseph and William King. The defendant, William Thomas, further answering for himself, denies fraud in stating account of April, 1852, and explains manner of stating account; says " he did not know but that said charge of $2,281.10 was the footing of a long account, and, in fact, such was his impression at the time; and he presented to the master the statement and receipt aforesaid, as evidence that settlements had been made between the estates, and urged that fact as a reason why no balance should be reported." After further statements of reasonings and opinions of said defendants as to the supposed propriety of the master's modification of his report, 17th October, 1855, said defendant says that he authorized the master to charge the estate of William King with the balance that had been ascertained against the estate of Joseph King, in favor of Nicholas King, and the master changed the report so as to make it as it now appears. Defendant did not know what or how many charges or items had been included in the account which he presented to the master. He (defendant) thought it possible that some accounts had been kept by Joseph King in his lifetime, upon which the settlement had been made, and that the accounts in relation to the lands in Morgan and Scott, had been included. Admits himself in funds to pay decree that may be rendered in this case, and says that J. C. Hamilton has fully and finally settled his administration of the estate of William King.

Answer of I. L. Morrison, guardian *ad litem* for infant defendant, Mary J. T. King.

Replication of complainants to answer of George C. King and others.

*James Berdan*, special master, deposes that he modified his third statement of accounts in case of ———, etc., on the first day of the October term, 1855, Circuit Court of Morgan ; and the presentation by William Thomas, without any explanatory testimony, of the account of April, 1852, which was in his (Thomas') hand-writing, and which he (the witness) accepted as evidence of a settlement of all accounts between the estates of Joseph King and William King ; and that if he (the witness) had been aware that the leading item in said account of $2,281.10 consisted of the remittance of the sterling money from England, he would not have regarded and treated it as affording evidence of the settlement of partnership interests, which it had been referred to him to state and adjust.

*John Peter* testifies that he does not remember who made out the account of April, 1852 ; his impression is that Judge Thomas presented it to him for his signature ; that the item of $2,281.10 consisted of a sum of sterling money, sent by Nicholas King from England in 1843, by the hand of William King, to Joseph King, but which was not paid over to him on account of the illness of which he died ; that his co-executor, William King, retained the money in his own hands, and loaned it, the interest thereon, up to the time witness became chargeable therewith, amounting to the sum of $325.60 ; that his co-executor, in his lifetime, in a settlement of his accounts, as guardian in that behalf, with the Court of Probate of Greene county, was allowed a credit of $606.99 ; that after the death of his co-executor, William King, witness received from his widow, Rachel King, notes and mortgages that he had taken to the use of the heirs of said Joseph King, deceased, amounting to $2,004.50, as shown by said account, which witness had accounted for with, and paid over to, the heirs of said Joseph King, deceased. Witness never had any settlement with J. C. Hamilton, as administrator of William King, deceased ; nor did he ever pay witness anything on said account. All that the witness received came through the hands of the said Rachel, before witness was notified of the appointment of Hamilton as administrator of William King. The account was furnished said Hamilton as a mere voucher.

The decree in vacation, 10th November, 1857, *pro forma*, excludes as evidence the record and proceedings in the case of *Nicholas King* v. *J. C. Hamilton*, administrator of William King, deceased, and others, and dismisses bill. The record and proceedings in the Supreme Court, so far as admissible, to be read in evidence, and treated as part of the record in this case.

Errors assigned :

1st. That the court below excluded from this case, as evi-

dence, the record and proceedings in the case of *Nicholas King*
v. *John C. Hamilton,* administrator of William King, deceased,
and others.

2nd. That the court below dismissed the bill of complainants.

3rd. That the court below did not grant to complainants the
specific relief they asked, or any relief.

This cause was heard before WOODSON, Judge.

D. A. and T. W. SMITH, for Appellants.

W. THOMAS, S. T. LOGAN and A. LINCOLN, for Appellees.

SKINNER, J.    Nicholas King filed his bill in equity against
the personal representatives and heirs of William and Joseph
King, to obtain his portion of personal and real estate held by
the personal representatives and heirs of William and Joseph.
On the hearing, the court rendered a decree settling the rights
of Nicholas as between him and the defendants to that bill, and
specially reserving to the heirs and representatives of Joseph,
their rights as against the heirs and representatives of William.

The heirs of Joseph filed this bill to adjust those rights re-
served in the decree, and seek to establish them against the
heirs and representatives of William.

On the hearing of this bill, the complainants offered to read
certain depositions taken in the former suit, and the court refused
to allow them to be read.

The rule is, that depositions taken in a former suit between
the same parties, involving the same question, or subject matter,
are admissible when the question again arises for judicial deter-
mination.    And it is not material that the parties be identical,
or that there be complete mutuality in respect to their relation
to each other, or to the subject matter.    It is sufficient, if the
same matter were in issue in both cases, and those against whom
the depositions are offered, or those under whom they claim the
estate or right in question, had opportunity of cross-examining
the witnesses and testing the truth of their testimony.

Here, substantially the same questions are in issue and to be
determined, as in the former suit ; the rights of Nicholas and
the heirs of his two brothers, William and Joseph, among them-
selves, to the property held by William in trust for all ; and
these defendants, or those through whom they claim, and be-
tween whom and them, as to the estate in controversy, there is
privity, had full opportunity of testing the truth of the testi-
mony contained in the depositions, in the various ways known to
the law.    As against these defendants the depositions were

admissible.  *Dole* v. *Wiley*, 15 Ill. R. 576 ; 3 Greenl. Ev., secs. 326, 341, 342 ; 1 ibid., secs. 553, 554.

Decree reversed and cause remanded.

*Decree reversed.*