JAMES W. LARABEE, JR., Apellant, *vs.* MARY LARABEE *et al.* Appellees.

*Opinion filed June 16, 1909.*

1. WILLS—*when issue of undue influence should be taken from jury.* The issue of undue influence should be taken from the jury in a will case where the evidence shows that the testator went alone to the scrivener and had the will drawn and that none of the persons claimed to have exercised undue influence were present when the will was prepared, under consideration or executed, and there is no proof that they had anything to do with making the will.

2. SAME—*undue influence is not to be proved by opinions of witnesses.* Whether a certain person could use any unusual influence over the testator and whether the witness had ever seen such person use influence over the testator are not proper questions, as such conclusion should be drawn, if at all, by the jury from the facts shown, and not proved by the opinions of witnesses.

3. SAME—*when instructions as to unreasonableness of will are not misleading.* Instructions stating that the jury have nothing to do with remedying or adjusting inequalities of the will, and that if they believe the testator was of sound mind and executed the will it is immaterial whether they believe the will is just, are not misleading, as excluding from consideration, upon the question of the testator's mental capacity, the unfairness and injustice of the will, where other instructions expressly require the jury to consider the injustice or unreasonableness of the will in determining whether the testator was of sound mind.

4. SAME—*what is not a proper cross-examination.* A witness who has testified to a single transaction with the testator four months before the will was made should not be asked, on cross-examination, what was the condition of the testator's mind during the last two years of his life with regard to getting into an uncontrollable rage; nor should a physician who has testified as to the testator's mental condition, and who has stated, on cross-examination, that he had seen two of the testator's sons at his home during his last illness, be further cross-examined as to whether their relations appeared to be friendly.

5. SAME—*fact that one of defendants did not authorize attorney to file answer is of no concern to jury.* The jury in a will case are not concerned with the pleadings, and it is not error to refuse to permit the contestant to prove by one of the defendants that he had not authorized any attorney to appear and defend the suit for him, although the answer purported to be filed for all defendants.

6. SAME—*what does not warrant assumption that will was pro-bated.* The facts that a copy of a will and the testimony of the subscribing witness is called a "certified" copy of the will, and that after the testimony of the witnesses appear the words, "Here follows certificate of clerk," do not warrant any assumption that the will had been probated, where the certificate is not set out and there is nothing to show what it contained; and while it is error to admit such copy in evidence after the original will has been admitted, it is harmless.

7. SAME—*effect where executor's oath is attached to original will taken by jury on retirement.* The facts that the executor's oath was attached to the original will taken by the jury upon retirement and that the will bore the endorsement of the probate judge showing its admission to probate are not grounds for reversal, where the endorsement was covered, according to the agreement of the attorneys, by pasting paper over it, and the executor's oath was not noticed by the attorneys or by the court, not having been given or offered in evidence.

8. NEW TRIAL—*suspicion that jurors may have read papers during trial is not ground for new trial.* Mere suspicion that certain of the jurors may have read a damaging article relating to the trial of a will case, which was in a newspaper lying around the hotel where the jurors stayed at night during the trial, is not a ground for setting aside the verdict.

9. SAME—*what is not inconsistent with truth of juror's statement.* The truth of a juror's statement, on his *voir dire,* that he had never heard anything about the case before he heard the statement of counsel in open court is not impeached by an affidavit that before that time a remark had been made in the juror's hearing by a stranger in a certain barber shop that "he would not swear to a lie for any man, and that Larabee [the testator] was sane and the boys had not treated him right."

APPEAL from the Circuit Court of Lee county; the Hon. OSCAR E. HEARD, Judge, presiding.

CLYDE SMITH, and BROWNE & WILEY, for appellant.

C. F. PRESTON, and A. C. BARDWELL, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

James W. Larabee, Sr., died on December 30, 1907, being about sixty-nine years of age, and having executed on May 10, 1907, a will, which was admitted to probate on

February 3, 1908. He left a widow, Mary Larabee, and his five sons and one daughter, his only heirs. His estate was worth about $52,000 and his indebtedness was about $7000. He owned a homestead in the village of Paw Paw, which, together with the personal property on the premises, he devised to his wife for life. He owned a farm of 320 acres in LaSalle county, 160 acres of which, together with the personal property thereon, he devised to his youngest son, Charles D., 80 acres to his son Lewis B., and 80 acres to his daugther, Mary Weaver, to whom was also devised the remainder in the homestead, the devisees of the farm being charged with the payment of a proportionate part of all the testator's indebtedness. The residue of the estate was devised to the widow. The testator's three oldest children, Samuel H. Larabee, William R. Larabee and James W. Larabee, Jr., are not mentioned or referred to in the will. James W. Larabee, Jr., filed a bill to set aside the will. Issues of fact were submitted to a jury, a verdict was returned in favor of the will and a decree was entered dismissing the bill, from which complainant has appealed.

The will was attacked for want of mental capacity in the testator to make it and for undue influence in procuring its execution, claimed to have been exercised by Mary Larabee and Charles D. Larabee.

From the close of the civil war, in which he was a soldier, until 1900, the testator had been engaged in farming. He then rented his farm and purchased a residence in the village of Paw Paw, where he thereafter resided until his death. His children were all married except Charles, who attended school until the last year of the testator's life, when he managed and lived on the LaSalle county farm. A few days before the will was executed the testator drove from his home to Mendota for the purpose of having his will drawn by L. B. Crooker. He spent two days at Mendota, during which he visited two sisters of his wife who lived there. He spent the greater part of a half a day with

Mr. Crooker, who took memoranda of what he said and then wrote out the will while the testator was still in his office, except the description of the Paw Paw property, which the testator was unable to give. The descriptions of the farm property were inserted as the testator repeated them from memory. After the testator returned home he sent a deed to Mr. Crooker containing a description of the Paw Paw property, and Mr. Crooker then re-wrote the whole will, inserting this description, and sent it to the testator, who afterward executed it in the presence of two witnesses, who attested it as required by law.

At the close of the evidence the court sustained a motion by the proponents to instruct the jury to find in their favor on the issue of undue influence. This action was right, for there was no evidence which justified the submission of this question to the jury. The undue influence which will avoid a will must be directly connected with the execution of the instrument and be operating when it is made, (*Wickes* v. *Walden,* 228 Ill. 56,) and it must be specially directed toward procuring the will in favor of particular parties, and be such as to destroy the freedom of the testator's will and render the instrument more the offspring of the will of another than his own. (*Roe* v. *Taylor,* 45 Ill. 485; *Woodman* v. *Illinois Trust and Savings Bank,* 211 id. 578; *Snell* v. *Weldon,* 239 id. 279.) There is no evidence that Mary Larabee or Charles D. Larabee ever spoke to the testator upon the subject of his will, or suggested that he should make one, or what he should put in it. Neither of them was present at the time it was prepared or under consideration or at the time it was executed, and there is no evidence tending to show that either of them had anything to do with the making of the will.

In regard to the mental capacity of the testator numerous witnesses were examined and a contrariety of opinion was expressed. After the testator's retirement from the farm his business was not extensive, but such as it was he

transacted it himself. He borrowed money, signed notes as security, was chairman of the board of trustees of the Methodist church at Paw Paw and commander of the Grand Army post. Those who associated with him intimately from day to day never questioned his mental capacity or noticed any failure of mental power. Their opinions are based upon the continual observation of acquaintance and frequent association. The contrary opinions were based, in some instances and to some extent, upon the will itself, or upon casual observations of occasional outbursts of ill-temper happening during a period of ten or fifteen years. It would do no good to discuss the evidence in detail. Conceding that it is conflicting, we are satisfied that the finding of the jury is in accordance with the preponderance of the evidence.

Objection is made to the action of the court in admitting and rejecting evidence and instructing the jury. Dr. Avery was examined in behalf of the appellees as a witness in regard to the testator's mental condition. On cross-examination he stated that he had seen the testator's sons James and William at his home during his last illness. He was then asked if their relations appeared to be friendly. An objection was made to the question on the ground that it was not cross-examination. It clearly was not, and the objection was properly sustained.

Appellees examined George Feik as to a single transaction with the testator in January, 1907,—the purchase of some horses. The appellant inquired what was the condition of his mind in regard to getting into an uncontrollable rage the last two years of his life. This was not cross-examination, and the objection made on that ground to the inquiry was properly sustained.

The appellant produced Hannah Haight as a witness, and having proved by her the friendly relations between the testator and his sons William and James so far as she knew them, asked her at what ages these boys left home and

what were their habits of work and industry when they were at home. An objection was sustained to this question, and this ruling is assigned as error. It was not erroneous, for the answer could have thrown no light on the issues.

Phillip Stewart testified, at complainant's instance, to having seen the testator display unusual temper. He was examined at some length, and having given an account of such occasions as he could remember, was asked if there were any occasions since, when he had seen the testator in a rage. An objection was sustained. It is manifest, however, from the reading of his testimony, that he had told all he knew on the subject, and it was not error to sustain the objection.

It is insisted that the court erred in refusing to permit J. M. VanHorn to answer the question whether in his opinion Mr. Larabee was of sound or unsound mind. The court did sustain an objection to this question, but later the witness did testify, without objection, to his opinion that the testator was of unsound mind, and the error was thus obviated.

It is claimed that it was error to sustain an objection to questions asked a witness whether Charles could use any unusual influence over the testator and if he had ever seen Charles use any influence over his father. The ruling was obviously right. Such a conclusion is to be drawn, if at all, by the jury from the facts shown, and not proved by the opinions of witnesses.

Other objections made to rulings of the court on the admission of testimony we do not regard as meritorious. There was no harmful error to appellant in such rulings.

An answer was filed in the cause in the name of all the defendants. On the trial the appellant offered to prove by William R. Larabee that he had not authorized any attorney to appear or defend the suit for him, and insists that it was error not to permit him to do so. Clearly it was not error. The jury had nothing to do with the pleadings.

The issue to be tried was whether or not the document offered was the will of James W. Larabee. The evidence offered was of no assistance in determining that question.

It is further insisted that the court erred in admitting in evidence a certified copy of the will and affidavits of the subscribing witnesses. The appellees, after examining the two subscribing witnesses, offered the original will in evidence and it was read to the jury. Afterward they offered in evidence a certified copy of the will and affidavits to the will, marked "Exhibit C." Appellant's objection was overruled and "Exhibit C" was read to the jury, consisting of a copy of the will and the testimony of the subscribing witnesses. After the testimony of the witnesses the transcript of the record contains these words: "Here follows certificate of county clerk," but the certificate is not set out. What it contained does not appear. We cannot assume that it showed the will to have been admitted to probate. We can not assume that it showed anything. Calling a document a certified copy of a will and stating in a bill of exceptions, "Here follows certificate of clerk," is no evidence that any certificate was attached to the copy. The certificate of the oath of the witness is made admissible in evidence by the statute, and while it was improper to admit a copy of the will in evidence when the original had already been received, it could do no harm. In fact, the copy was not taken by the jury in their retirement, but only the original. And another ground of error urged is, that such original bore the endorsement of the probate judge showing its admission to probate and had attached to it the executor's oath. The record shows that as the jury were about to retire it was agreed by the attorneys for the respective parties that "Exhibit A," being the will and the original affidavits of the witnesses attached thereto, should go to the jury instead of "Exhibit C." The will, the affidavits of the witnesses, the oath of the executor and the certificate of probate were all fastened together, the certificate of pro-

bate on the outside. The attention of the court being called to the certificate of probate, it was torn off and did not go to the jury. The attention of the court was then called to the endorsement on the back of the will, and it was agreed by the attorneys for the parties that the court should paste a paper over said endorsement, which the court did in the presence of said attorneys. After pasting said paper thereon and exhibiting the same to the attorneys, the court inquired if it was satisfactory to have the same go to the jury in the shape it then was. The attorneys answered in the affirmative, the papers so fastened together were given to the jury, and they were told by the court that they must not read the endorsement underneath said paper so pasted thereon, and that the court relied on their honor not to read the same. The executor's oath was not noticed by anyone at the time and no specific objection was made to the same. Counsel for the complainant had the papers so fastened together in their hands and examined the same when said "Exhibit A" and the affidavits were offered in evidence. It thus appears that, so far as the endorsement of the judge was concerned, the action of the court was with the express assent of counsel for complainant. So far as the executor's oath was concerned, there was no action of the court. It was not offered in evidence and was not admitted in evidence. The papers were all fastened together and were examined by all the counsel. If the court's attention had been called to the oath it would have been torn off, as the certificate was. It was given to the jury, not surreptitiously but by the oversight of all the counsel, and we do not think the verdict should have been set aside on that account.

The court, at the request of appellees, gave the following instructions:

2. "The jury are instructed that they have nothing whatever to do in this case with adjusting or remedying any unfairness or inequity of the testamentary disposition

which said James W. Larabee, Sr., in his purported will made of his property, if any such is shown by the evidence in this case. The only question in the case for the jury to try is this: Is the writing offered the will of the deceased? And your verdict must either be that it is his will or that it is not.

3. "If the jury believe, from the evidence, that James W. Larabee, Sr., executed the writing here produced as his last will, and that he then had sufficient mental capacity, as defined in these instructions, to make a valid will, then it is immaterial whether in your opinion the will makes a reasonable, just or unjust, judicious or injudicious, disposition of the property mentioned in it."

It is insisted that these instructions are erroneous because they exclude from the consideration of the jury, as bearing upon the mental capacity of the testator, the propriety or impropriety, justice or injustice, of the provisions of the will. In view of the fact that the jury were expressly told by appellant's tenth and thirteenth instructions that the unequal distribution of his property among his children, and the propriety or impropriety, reasonableness or unreasonableness, of the bequests made in his will should be considered in determining whether the testator was of sound and disposing mind and memory or not, it is impossible that the jury could have believed that the instructions complained of meant more than that they were not called upon to remedy any injustice or unfairness in the disposition of his property made by the testator.

Complaint is also made of the refusal of two instructions asked by the complainant, but they were fully covered by those given.

One of the reasons alleged in appellant's motion for a new trial is, that the jury had access to, and the jurors read, a prejudicial statement regarding the facts in the case published in a daily newspaper during the progress of the trial, and on the hearing of the motion appellant read his

affidavit showing that two of the jurors boarded at a certain hotel during the trial; that they were about the hotel office a large part of the evening of October 13, 1908, while the case was on trial, and that a copy of the *Dixon Daily Star* of that date was lying on the table in the hotel office during that evening and the next day. Attached to the affidavit is a copy of the paper containing an article about the case then on trial and stating alleged facts with reference to the testator's family, which were suggested as explaining some of the provisions of his will. There is no evidence that any one of the jurors read the article, and mere suspicion is not sufficient to set aside a verdict.

Another reason urged for a new trial was the alleged false statement, on his *voir dire,* of Charles Eastman, one of the jurors who tried the case, that he had never heard anything about the case before he heard the statement of counsel in open court. The trial began in the afternoon of October 13, 1908, and on the hearing of the motion affidavits were produced that in the forenoon of that day, in a barber shop in Dixon, where the trial occurred, in the presence and hearing of Eastman, a stranger (supposed to be William Phal) made these remarks: "That he [the stranger] would not swear to a lie for any man, and that Larabee was sane, and that the boys had not treated him right; that he had worked for the old man, and that he [the stranger] and the boys both got drunk." These affidavits are supposed to be inconsistent with Eastman's statement. They are not. The statement of the stranger conveyed no information about the case. One hearing it would not even learn that there was a case and might truthfully answer that he had never heard of it.

The decree of the circuit court will be affirmed.

*Decree affirmed.*