Myrtle Thompson, as Administrator of Estate of Herman Thompson, Deceased, Plaintiff-Appellee, v. City of Bushnell, Defendant-Appellant.

Gen. No. 9,826.

Opinion filed November 14, 1952. Released for publication December 26, 1952.

VAUGHT, ROBINSON & FOREMAN, of Jacksonville, and LYBARGER & COLLINS, of Bushnell, for appellant.

T. OTIS BROWN, of Bushnell, BRIAN & WILSON, of Toulon, and BLACK, BLACK & BORDEN, of Peoria, for appellee.

MR. PRESIDING JUSTICE WHEAT delivered the opinion of the court.

This is an action under the Injuries Act for the alleged wrongful death of Herman Thompson, by his administrator, Myrtle Thompson, plaintiff-appellee,

against the City of Bushnell, a municipal corporation, defendant-appellant. On the verdict of a jury judgment was entered for plaintiff in the sum of $15,000 and costs. Motion for a new trial was denied and this appeal follows.

The complaint consisted of two counts. In Count I plaintiff alleged that Herman Thompson and his widow and next of kin, up to and at the time of the explosion, were each free from any fault or negligence contributing to his death, and that the defendant city was guilty of negligence in one or more of the following respects, in that it negligently and wrongfully did, or failed to do, one or more of the following:

(a) Operated and controlled its sewers in a dangerous and unsafe condition by allowing butane gas to accumulate therein;

(b) Allowed gas to escape from its gas mains and enter or seep and percolate into its sewers, including the sewer main serving the Thompson residence;

(c) Allowed gas to escape from its gas distribution mains and enter the basement of the Thompson residence;

(d) Allowed gas to escape from service connections of customers to the City Gas distribution mains, and enter into the sewer servicing the Thompson residence;

(e) Failed to maintain reasonable inspection of its gas distribution mains, thereby creating a dangerous condition;

(f) Failed to maintain reasonable inspection of its gas service connections, thereby permitting its gas to escape from the same and accumulate in explosive quantities in the sewer servicing the Thompson residence;

(g) Failed to shut off gas or remedy the dangerous condition after the City had knowledge of the dangerous condition existing and that such condition could reasonably cause injury to Herman Thompson.

397

(h) Failed to discover or repair leaks in its gas mains, thereby allowing gas to escape and enter the sewer servicing the Thompson residence.

(i) So made service connections to its gas distribution mains whereby gas escaped from the same and entered the sewer main servicing the Thompson residence;

(j) Allowed butane gas to collect in its sewers, including the sewer main servicing the Thompson residence;

(k) Failed to remove butane gas after the same had seeped or percolated into its sewers, including the sewer main servicing the Thompson residence in explosive quantities;

Plaintiff further alleged that as a direct and proximate result of one or more of the foregoing alleged acts of negligence or omissions of duty, the said gas entered the basement of the Thompson house and violently exploded on July 9, 1948, when Herman Thompson struck a match to burn some papers in his furnace.

Plaintiff further alleged that the defendant had notice and knowledge of the alleged dangerous condition existing in the sewer on Wells Street servicing the Thompson residence and knew or by reasonable care should have known, that gas from its gas plant was escaping from its distribution mains or service connections and seeping and percolating into said sewer.

The defendant in its answer, denied that it was negligent in any manner, as alleged in said Count I, and denied that the said Herman Thompson, his widow, or next of kin, up to and at the time of the explosion, were each free of any fault or negligence contributing to his death, and it further denied that it knew of the alleged dangerous conditions in the sewer on East Wells Street, that it knew or by reasonable care could have known, that gas from its gas plant was escaping from its distribution mains and percolating or seeping into said sewer.

In Count II plaintiff again alleged that the said Herman Thompson, his widow and next of kin, were each, up to and at the time of the explosion, free from any fault or negligence contributing to the death of the said Herman Thompson and then alleged that the defendant City was guilty of negligence in one or more of the following respects, namely, that it negligently and wrongfully did, or failed to do, one or more of the following:

(a) Maintained and operated its sewers by allowing gas to accumulate in said sewers;

(b) Failed to inspect its sewers after having had notice of the dangerous condition existing in said sewers;

(c) Allowed gas to collect in its sewers, including the sewer main servicing the Thompson residence in dangerous and explosive quantities;

(d) Failed to remove the gas which was in explosive quantities after the same had collected in its sewers, including the sewer main servicing the Thompson residence;

(e) Failed to warn residents of the dangerous condition of the sewers;

(f) Failed to keep vents open on sewer manhole covers.

Count II further alleged that as the direct and proximate result of one or more of the foregoing alleged negligent acts or omissions of duty on the part of the defendant, explosive gas entered the basement of the Thompson house through the service connections to said sewer and violently exploded in the basement on July 9, 1948, when the said Herman Thompson struck a match to burn some papers in his furnace.

Plaintiff further alleged that the City knew of the alleged dangerous condition existing in the sewer on East Wells Street servicing the Thompson residence.

In Count II of the complaint, it is not alleged that the gas involved was gas from the City's gas mains or service connections and plaintiff did not specify what type of gas was involved.

Defendant denied each of the allegations of negligence set forth in Count II of the complaint, and denied that the explosion was the proximate result of the alleged negligent acts or omissions of duty, denied that the said Herman Thompson, his widow and his next of kin, up to and at the time of the explosion, were each free from any fault or negligence contributing to his death, and further denied that it knew of the alleged dangerous condition existing in the sewer in East Wells Street servicing the Thompson residence.

The trial of this case occupied nine days and the evidence taken was reported in 534 pages and in addition there were numerous exhibits in evidence. Much of the evidence is of a technical nature and in the interest of both clarity and brevity will be discussed only as it pertains to the pertinent assignments of error.

As to the undisputed evidence it appears that the City of Bushnell, population 3500, owned and operated a sewer system and also a gas distribution system. In the operation of the latter, butane gas in liquid form was obtained in tank cars, vaporized by the addition of air and under pressure of eight or nine pounds was distributed through the mains to the consumers in Bushnell. A chemical was added to the gas intended to give to it a perceptible odor. Herman Thompson, the deceased, was of the age of forty-three years at the time of the explosion on July 9th, 1948, had been married about twenty-four years, he and Mrs. Thompson were the parents of several children, he was Chief of Police in 1948 earning $160 per month and died on February 23, 1950, as a result of the injuries sustained by reason of the explosion. The Thompsons owned

their home at 815 East Wells Street and moved into it in 1944 at which time a kitchen stove was connected with the city gas mains; three basement floor drains connected with the city sewer mains. These three drains did not have traps built into them but although slightly controverted it does appear to be fairly established that there was a vent from the sewer line to the surface about two feet outside of the house foundation. On June 21, 1948, three metal manhole covers in the Bushnell streets were blown into the air by reason of explosions in the sewer system. One of these three manholes from which the covers were blown was located about one hundred feet from the Thompson home. City of Bushnell officials had almost immediate knowledge of this. A neighbor of the Thompsons by the name of George Hagaman had been bothered during the summer of 1948 before the Thompson incident by minor basement explosions at his basement drains although they were equipped with traps. It appears with reasonable certainty that certain of the city officials had knowledge of this condition. The sewer mains were flushed with water after the explosion of June 21st for the purpose of removing gas and of removing organic materials the decomposition of which might cause a gas. On the morning of July 7, 1948, decedent burned waste paper in his coal burning furnace; he did not do so on July 8th because of extra work as a police officer; on the morning of July 9th he placed waste paper in the furnace, lighted a match and the explosion occurred. There were no other eyewitnesses. His reputation as to habits of care and caution was established. Following the explosion for a period of several months tests were made by means of an instrument called an explosimeter purporting to disclose the condition of the sewers at various points where manholes were located as to the existence of explosive gases and some samples of the gas were also taken. The purpose of plaintiff in

presenting this testimony was to show that the subsequent conditions were approximately the same as those existing on the day of the explosion and that the sewer mains contained in dangerous explosive intensity butane gas, being the same type used by the city in its gas mains and that this gas was not methane or sewer gas (caused by the decomposition of organic materials). It appears that butane gas is heavier than air, would not be appreciably affected by a sewer vent nor by flushing of sewers; that methane gas is lighter than air and that a vent would permit its escape and that flushing the sewers would dispose of the organic materials causing the condition. Defendant offered some testimony for the purpose of showing that various filling stations and cleaning plants might or could have discharged liquids into the sewer mains which might vaporize into explosive gases. It is with these latter subjects that the expert witnesses were most concerned.

Defendant argues at length as to many alleged errors. These may be basically grouped as follows:

(1) Plaintiff has failed to show by preponderance of evidence that defendant was guilty of any of the acts of negligence charged.

(2) Plaintiff has failed to show by preponderance of evidence that decedent was free from contributory negligence.

(3) That the court admitted improper evidence as to the number, ages and dependencies of the children of the decedent.

(4) The court admitted in evidence plaintiff's exhibit 6 being a deposition in another suit wherein Herman Thompson was plaintiff and City of Bushnell was defendant.

(5) The court improperly admitted evidence as to the condition of the sewer mains after the explosion.

(6) The court improperly admitted plaintiff's exhibits 5H and 5I.

(7) The court improperly admitted evidence as to the reputation of the deceased for care and caution.

(8) The court improperly admitted the testimony of the witness Dr. Evans.

(9) The court erred in the giving and refusing of certain instructions.

(10) The verdict was the result of passion and prejudice because of the publication of certain newspaper articles.

(11) The verdict is excessive.

■ As to the contention that it was not shown by a preponderance of the evidence that defendant was guilty of some of the acts of negligence as charged and that the evidence fails to show that decedent was free from contributory negligence, the court believes that there was ample evidence as an issue of fact for the jury to find that defendant was guilty of some negligence as charged and that decedent was free from contributory negligence. The findings as to these matters were not against the manifest weight of the evidence.

■ As to the testimony relating to the number, ages and dependency of the children of the decedent, it was not reversible error nor was it prejudicial for the court to allow this evidence. In a recent case this subject has been discussed by this court in which we held that this type of testimony did not constitute reversible error. (*Ranson v. Wilson*, 335 Ill. App. 7.)

■ As to the argument that the court improperly admitted into evidence plaintiff's exhibit 6, it does not appear that this exhibit is included in the abstract. From the arguments of counsel, however, it appears that this consisted of the deposition of one Claude Romine taken in a suit wherein Herman Thompson had sued the City of Bushnell for the injuries from which he subsequently died and that after his death the instant suit was filed. The evidence as to liability would appear to be the same in both cases and the parties are

403

the same excepting that in this suit plaintiff is suing as administrator. In the case of *Wade v. King,* 19 Ill. 301, the court stated, "The rule is, that depositions taken in a former suit between the same parties, involving the same question, or subject matter, are admissible when the question again arises for judicial determination and it is not material that the parties be identical, or that there be complete mutuality in respect to their relation to each other, or to the subject matter. It is sufficient, if the same matter were in issue in both cases, and those against whom the depositions are offered, or those under whom they claim the estate or right in question, had opportunity of cross-examining the witnesses and testing the truth of their testimony." It is the finding of this court that it was within the discretion of the trial judge to admit such deposition in evidence.

 It is further urged that the court improperly admitted testimony as to the condition of the sewer mains after the date of the explosion on July 9, 1948, and more particularly the condition of said sewers on September 29th and 30th and October 12, 1948. In general such evidence is admissible where it appears that substantially the same conditions existed subsequent to the injury as existed at the time. We think that there was sufficient evidence on such subject warranting the ruling of the court admitting such evidence and that no reversible error occurred by reason of the same.

 Objections to the admission of plaintiff's exhibits 5H and 5I are not well taken in view of what is last above stated as these exhibits merely set forth the findings as to the explosimeter readings taken on October 12, 1948, and an analysis of the gas samples collected at such time. It is also noted that when defendant objected to testimony in regard to these exhibits it was stated by counsel for the city that it was his

404

understanding that the court would pass upon this subject later. Thereafter the court was never requested by defendant to pass upon the admissibility of the testimony or the sufficiency of the foundation laid for the introduction of the exhibits. Defendant must be held to have waived such objection by its failure to obtain a ruling upon the same.

█ It is next argued that the court erred in admitting evidence of the reputation of the decedent for care and caution. The principal contention seems to be that although it is proper to admit testimony as to habits as to care and caution, it is improper to hear testimony as to reputation as to care and caution. We believe this objection to be trifling and refer to the case of *Illinois Central R. Co. v. Prickett,* 210 Ill. 140, wherein the court held that reputation as to care and caution was competent.

██ It is next urged that the testimony of the expert witness, Dr. Evans, in reply to hypothetical questions was improperly admitted. The court has carefully read all of the testimony in the case and has analytically studied the statement of assumed facts in the hypothetical questions and it is our opinion that there was not sufficient variance between the facts established by the evidence and the facts assumed in the questions to render such questions incompetent. As was stated in *Goddard v. Enzler,* 222 Ill. 462, "It is the province of the jury to determine whether the state of facts assumed by the expert to be true has been established by the evidence. In case they find that such state of facts has been established, then they are authorized to adopt the opinion of the expert as their conclusion upon that state of facts; but if they find that such assumed state of facts has not been established, then the opinion of the expert, as a matter of course, cannot be followed by them." The questions in this case included all of the essential elements as shown by

the evidence, necessary to a fair presentation of the question. The objection that this testimony of Dr. Evans invaded the province of the jury is not well taken as the giving or stating of conclusions is one of the purposes in presenting such type of testimony.

The court has examined all of the tendered instructions and finds that no reversible error was committed by the court in the giving and refusing of instructions. Taken as a series and read to the jury as they must be, we believe the jury was fully and fairly instructed on the issues of the case.

It is further contended that the verdict was the result of passion and prejudice by reason of certain articles published in a newspaper and sets forth that five of the jurors were subscribers to the paper as was the husband of another juror. In the first place, mere suspicion, without evidence, that certain jurors may have read an article in a paper is not sufficient grounds for setting aside a verdict. (*Larabee v. Larabee,* 240 Ill. 576.) In addition to this, we have read the articles in question and are of the opinion that had any or all of the jurors read the same during the trial, no prejudice would have resulted.

It is further urged that the verdict is excessive. We do not so find considering the facts of the case.

There are numerous other reasons urged for the granting of a new trial, but they all come within the general classification of objections that we have heretofore discussed. Considering the entire record in the case, the court believes that each of the parties had a full, fair and impartial trial. The judgment of the circuit court is affirmed.

*Affirmed.*