WILLIAM M. MICHAEL

*v.*

ELMER D. MARSHALL, Exr. *et al.*

*Opinion filed February 18, 1903.*

1. EVIDENCE—*what questions improper upon subject of undue influ-
ence.* Whether or not the testatrix was a person easily influenced,
what influence certain persons exercised over her and the extent
thereof, and whether she was afraid of them, are questions calling
for conclusions of fact, and it is not error to sustain objections
thereto in a proceeding to contest a will upon the ground of undue
influence by such persons.

2. SAME—*burden of proof does not shift.* Technically, the burden
of proof in any case is determined by the issues and does not shift,
and at the end of the case the pleader, upon whom the burden
rests, must have sustained his position by a preponderance.

3. WILLS—*rule relating to gifts to parties in fiduciary relation does not
apply to wills.* The rule casting upon the recipient of a gift or con-
veyance from another to whom he stands in a fiduciary relation
the burden of proving the absence of undue influence, when the
gift or conveyance is attacked, does not apply to wills.

4. SAME—*burden is upon contestant to prove undue influence.* Proof
that the executor had been the guardian of the testatrix until a
short time before the will was made, and that members of his fam-
ily were substantially benefited by the will, which he assisted in
preparing no further than to request the attendance of witnesses,
does not cast upon the defendants the burden of proving there
was no undue influence; although such facts may be considered by
the jury as bearing upon the question.

APPEAL from the Circuit Court of Montgomery county; the Hon. W. M. FARMER, Judge, presiding.

LANE & COOPER, for appellant.

AMOS MILLER, and JAMES M. BAKER, for appellees.

THOMAS M. JETT, and DAVID R. KINDER, guardians *ad litem.*

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

William M. Michael, the appellant, filed his bill in this case in the circuit court of Montgomery county to set aside the will of his deceased sister, Mabel Michael, alleging mental incapacity and undue influence. The complainant was a devisee under the will, and the defendants were the appellees, Elmer D. Marshall, executor, Hattie S. Marshall and Helen O. Gorfio, beneficiaries under the will. An issue was formed as to whether the writing was the last will and testament of the said Mabel Michael, embracing said questions of mental incapacity and undue influence, and was submitted to a jury. Upon the trial the jury returned a verdict that the writing was the last will and testament of said Mabel Michael, deceased, and a decree was entered accordingly.

The principal facts established by the evidence are as follows: The defendant Elmer D. Marshall, who was named as executor in the will, was an uncle of the testatrix, and she had resided in his family after the death of her mother, which occurred February 13, 1894. He was appointed her guardian on February 21, 1894, and had the care and management of her estate, as guardian, until she arrived at the age of eighteen years, on September 22, 1899, when he settled with her and turned over the estate to her. Both of her parents died of consumption, and she had been delicate from childhood, with tendencies to the same disease, which finally became

developed in her and caused her death on April 15, 1900. The will was executed February 26, 1900, at a time when the disease had become so far advanced as to preclude any reasonable expectation of recovery. By the will she gave to her brother, the complainant, who lived at Springfield, Missouri, an undivided half of several pieces of real estate which they owned together, and she gave to the defendant Hattie S. Marshall, wife of said Elmer D. Marshall, a farm and thirty shares of bank stock of the par value of $3000. To the defendant Helen Opal Gorflo, a girl some years younger than testatrix, a member of the family and sister of Hattie S. Marshall, she gave twenty shares of bank stock. Elmer D. Marshall was a brother of Carrie E. Michael, the mother of testatrix. The will was drawn by James M. Truitt, an attorney, who died soon after the will was made. He was seen going to the house about that time, and a memorandum in his handwriting was found from which the will was evidently drawn, and which showed the disposition that was to be made of the property by the will. The value of the property devised to complainant, and that given to Hattie S. Marshall, aunt of the testatrix, was about the same. When the will was executed Elmer D. Marshall called upon the subscribing witnesses, L. G. Tyler, a book-keeper in a bank, and Lucy C. Tyler, his wife, and asked them to come down to his house. They did not know what they were summoned for, and were surprised to meet each other at the house, when Mrs. Marshall explained why they were requested to come. The will was lying on a table, and Mr. Tyler picked it up and asked the testatrix if that was her will, and she said it was. He then told her, all right; that she should sign it; and she got up and went to the table and signed it, and it was then signed by Mr. and Mrs. Tyler as witnesses. The testatrix looked delicate, pale and emaciated, but was not suffering, and was able to walk about the room. When the witnesses were leaving the room

the testatrix got up and went to Mr. Tyler and told him to say nothing about the will, as she did not wish it to be made public. There was no evidence tending in any degree to establish mental incapacity, but, on the contrary, it was proved that the testatrix was of sound mind and memory. After she became of age she had dealt with complainant, and bought from him bank stock amounting to $2500 and his half interest in the farm devised to Hattie S. Marshall, for which she paid him $3000.

The foregoing was all the evidence relating to the preparation or execution of the will. Elmer D. Marshall and his wife took great care of the testatrix, and looked after her during all the time she lived with them, both in respect to her health and her welfare, and she had manifested some natural restiveness at the restraint imposed, and had sometimes been irritated towards Helen Opal Gorflo,—not concerning any serious matter, but mainly because she went with her sometimes when she did not want her. The restraints were in regard to being on the street or out at unsuitable hours of the night, but she was allowed to attend parties and church, and church socials, and to visit among her friends both in the day and in the evening. The evidence shows that the care and restraint which were exercised were solely for the good of the testatrix and in her interest, out of solicitude both for her health and her personal welfare. This evidence was introduced for the purpose of showing that the testatrix was under the influence of Mr. and Mrs. Marshall, and that she would not have been apt to make a bequest to Opal Gorflo, because she disliked her. The evidence shows that in the later period of her life she realized the reason for the restrictions imposed upon her, and the propriety of them, and was thankful for them. They were no greater than any judicious parents would have imposed upon their own child from duty and affection. All of this the testatrix appreciated in the end, and manifested the greatest affection both for her uncle

and aunt, as well as a friendly feeling for Opal Gorflo. She expressed the greatest love for her aunt, and said that no one could have been kinder to her, and that her every wish had been anticipated and gratified.

The first thing in the order of events at the trial which is made the ground for seeking a reversal of the decree is, that the court erred in sustaining objections to questions calling for the opinions of witnesses. The questions were as to whether the testatrix was a person easily influenced; as to what influence her uncle and aunt exercised over her; to what extent she had been influenced by her uncle and to what extent she had been influenced by her aunt; whether she was afraid of her uncle, and other like questions. It is manifest that the court was right in its ruling, since the questions did not call for facts, but for mere opinions and conclusions from facts. (*Carpenter* v. *Calvert,* 83 Ill. 62.) The widest latitude was given to complainant to prove every fact from which undue influence might have been inferred, and, in fact, one witness for complainant stated that from what Mabel told her, and from what the witness saw, Mr. Marshall had complete control over her. Complainant was not unduly limited in the introduction of evidence.

It is also objected that the court erred in giving and refusing instructions. The court gave to the jury a considerable number of instructions asked by the respective parties, covering every phase of the law relating to the issue, but refused to give eighteen instructions which the complainant presented. These instructions are too lengthy and numerous to permit a full review of each within the limits of an opinion, but they were designed, in the main, to advise the jury that certain facts proved on the trial of the case imposed upon the defendants the burden of disproving the existence of undue influence. This is the principal question argued by counsel in the case, both on the proposition that the court erred in refusing to give the instructions, and upon the claim that

the verdict and decree are against the evidence. The instructions were designed to inform the jury that if the defendant Elmer D. Marshall had been the guardian of the testatrix and she had been a member of his family, the presumption would be that his influence and her dependence upon him continued after the guardianship ended, and if he was active in the preparation and execution of the will the burden of proof was cast upon the defendants to show, by a preponderance of the evidence, that the will was not obtained by undue influence, and unless that fact was proved the jury should find that it was procured by undue influence and that it was not the will of the testatrix. It is conceded that under the issue made in the pleadings the burden of proof of undue influence was on the complainant. (*Roe* v. *Taylor*, 45 Ill. 485; *Webster* v. *Yorty*, 194 id. 408.) But counsel say that after certain evidence had been introduced the burden was shifted, and thereafter rested upon the defendants. Counsel say, "We did not insist, on the trial of this cause, that confidential relations alone place the onus on defendants," and they sum up their view as follows: "We have stated before, and will now state it again so that the court will clearly understand our position, that the law is, when a person charges undue influence the burden of proof is on him to prove it; but in a will case, when the testimony of the proponents of the will discloses fiduciary relations, activity on the part of the guardian in connection with the execution of the will, and a large benefit to the guardian and his family, and the other facts as proven in this case, there can be no verdict for the will until the proponents of the will have fully satisfied the court, by the clearest proof, that the guardian dealt with his ward exactly like a stranger, taking no advantage of his influence over her or of his superior knowledge in relation to the subject matter of the transaction, and that the ward's act was the result of her own volition, and upon the fullest deliberation."

It is the rule that a gift or conveyance by a party to one sustaining a fiduciary relation to him is, upon his motion, *prima facie* voidable, and the burden of proof is cast on the one sustaining such relations to show fairness, good faith and the absence of undue influence. But that rule is not to be applied to a will, since the questions involved are entirely different. The law, in raising a presumption, usually applies to certain facts the conclusion derived from experience, and in the case of wills, knowledge and experience teach that persons in confidential relations are very likely to be the beneficiaries of wills freely made, and of the most natural character. No one would think of raising a presumption against a will in favor of a wife or husband, child or father, because fiduciary relations might exist, and casting the burden upon the beneficiary to disprove undue influence. It was held in *Rutherford* v. *Morris,* 77 Ill. 397, that the fact the beneficiaries of a will are those by whom the testator was surrounded and with whom he stood in confidential relations at the time of its execution was no ground for inferring undue influence. It is conceded that this is the law, but the argument is, that when taken in connection with other facts the presumption of undue influence is raised and the burden of proof is shifted. As a matter of law, the burden of proof in any case is determined by the issues and it does not shift, but at the end the party upon whom the burden rests by the pleadings, must have sustained his position by a preponderance of evidence. (*Phelps* v. *Jenkins,* 4 Scam. 48; *Slingloff* v. *Bruner,* 174 Ill. 561; 5 Am. & Eng. Ency. of Law,—2d ed.—30.) The burden of proof is often spoken of as equivalent to the duty of introducing evidence to meet or overcome a *prima facie* case, and in asking the court to instruct the jury that by the proof of certain facts the burden was cast on the defendants, the complainant in fact sought to have the court tell the jury that such facts constituted a *prima facie* case for complainant on the question of undue influ-

ence. The matters referred to in the refused instructions would all be proper for the consideration of the jury upon the question of undue influence, and it would not be improper to direct the jury to consider all the circumstances in respect to the execution of the will, but the court would not have been justified in invading the province of the jury by telling them that the facts recited in the instructions constituted *prima facie* evidence of undue influence. In fact, there was no evidence at all tending to prove that Elmer D. Marshall was active in the preparation of the will or in any way concerned with such preparation,—and this was one of the facts relied upon as a basis for the instructions. All the connection that he was shown to have had with the execution of the will was in requesting the attendance of the witnesses and being present when it was executed. The testatrix is presumed to have known the contents of the will which she signed, and there was no evidence that it was not prepared entirely according to her instructions. The court was right in declining to tell the jury that the facts detailed in the refused instructions cast the burden of proof upon the defendants that there was no undue influence.

Finally, it is insisted that the verdict and decree are contrary to the evidence. The only controverted question was one of undue influence, and we have stated above the substance of all the evidence bearing on that question. We do not think undue influence was proved. Without enlarging upon the evidence or the reasons which lead us to this conclusion, we cannot say that the verdict or decree is against the evidence.

The decree of the circuit court is affirmed.

*Decree affirmed.*