## Margaret Gilmore v. Bernard Lee.

FIDUCIARY RELATION—*when exists as between priest and parishioner.*
*Held*, under the facts in this case, that a fiduciary relation existed
between a priest and a parishioner which raised a presumption of
undue influence against a gift from the parishioner.

Bill in chancery. Error to the Circuit Court of Jersey county;
the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court
at the May term, 1907. Reversed and remanded. Opinion filed
December 7, 1907.

HAMILTON & HAMILTON and H. W. POGUE, for plaintiff in error.

THOMAS F. FERNS, for defendant in error.

MR. JUSTICE RAMSAY delivered the opinion of the court.

Plaintiff in error, Margaret Gilmore, filed her original bill in the Circuit Court of Jersey county against Bernard Lee to set aside a deed made by one Mary J. Knapp, deceased, to defendant in error, and to compel him to deliver to plaintiff in error certain personal property which had been procured by him from said deceased. Plaintiff in error afterward filed a supplemental bill to contest and set aside an alleged will of said Mary J. Knapp. Upon said bill and supplemental bills, and answers thereto, three issues were closed, viz., was plaintiff in error the daughter and only heir of the deceased, was the alleged will the last will and testament of deceased, and was the alleged deed and transfer or gift of the personal property made by deceased to defendant in error good and sufficient to pass ownership from deceased to Lee. The first of said issues was tried separately and upon such hearing a finding was made that plaintiff in error was the daughter and only heir at law of deceased. Later the issue presented by the supplemental bill was heard by the court without a jury and a decree rendered to

the effect that the alleged will was not the last will and testament of deceased. After such two findings, the cause, as presented by the original bill, was heard before the chancellor and a decree rendered to the effect that the transaction between deceased and Lee was a gift and that at the time Lee stood in a confidential relation toward deceased; that said gift or donation was a gift *causa mortis* and could not be sustained as to the attempt to convey the real estate, but could be sustained so far as the attempt was made to dispose of personal property, if made with deliberation by deceased and of her own free will. The court entered a decree setting aside the deed to the real estate and vested title in Margaret Gilmore, but sustained the gift to Lee as to the personal property from which decree Gilmore brought the case to this court by writ of error.

The matter to be determined is whether or not the gift by deceased of all her personal property to Lee, just prior to her death, was made with deliberation upon the part of deceased and of her own free will, and whether or not, at the time of the alleged gift, defendant in error stood in a fiduciary relation toward deceased.

The undisputed evidence shows that deceased, at the time of her death, was a widow and lived alone, was about seventy years of age and quite frail, that she was a very ardent and devout Catholic, somewhat illiterate and a great admirer of defendant in error, who was the priest in charge of the local parish and in control of the church to which deceased belonged. Under such circumstances we believe the finding of the trial court to the effect that at the time of this transaction defendant in error stood in a confidential relation to the deceased was fully warranted. Her very brief acquaintance of less than four months with defendant in error tends strongly to show that in all likelihood deceased was influenced by no other motive

than the one suggested by his position as priest of the parish. When once such relation of confidence has been shown to exist between the parties the law is well settled that if the one so holding such fiduciary relation toward the other receive a gift or transfer from such other, which is a direct benefit to the transferee, the presumption will be indulged that the party making the transfer was unduly influenced to make the same until such presumption is rebutted by the evidence. Dowie v. Driscoll, 203 Ill. 480; Michael v. Marshall, 201 Ill. 70-76.

The gift in the case at bar was made to defendant in error in his individual capacity. It was not made or attempted to be made to the church or parish, nor to defendant in error for the use or benefit, in any way, of the church, and we are constrained to hold upon a full consideration of all the evidence that such gift was not made by deceased with deliberation and of her own free will.

Mary J. Knapp, the deceased, was taken suddenly ill on Thursday evening, April 21, 1904, and was found in an unconscious condition by one of her neighbors who undressed her, put her in bed and cared for her during the night. Deceased regained her consciousness, but pneumonia speedily developed, from which disease she died, on the morning of the following Tuesday, so that her illness lasted only a little over four days. Deceased realized the serious nature of her illness and had defendant in error called, as soon as he could attend upon her, and on the afternoon of Friday he administered to her the last rites of the church.

The gift involved is alleged to have been made on the same day on which the last rites of the church were administered, and its validity rests almost wholly upon the testimony of Nellie Cope and her father, Henry Sandehouse. The witness Cope testified in substance that on Friday, April 22, between one and two P. M. she had occasion to go to the residence of

deceased, whom she found standing by her wardrobe door; that she saw her (deceased) go to her bureau drawer and lock it and then go to bed after "putting some papers under her mattress and some notes under her pillow;" that she, Cope, prepared the table for the last rites; that defendant in error came in and soon after his arrival her father, Sandehouse, came; that deceased turned over on her side, and, without assistance, took the papers from under the mattress and handed them to defendant in error and said: "These notes and mortgages I give you; I want you to have them;" that defendant in error looked at them and said that they were no good unless indorsed before witnesses; that deceased then said "write my name" and he wrote it; that she then asked Cope and Sandehouse to witness her mark, while she had her fingers on the top of the pen holder; that she then handed him another paper and said "This certificate of deposit I give to you to use for masses for me," and that after that he wrote her name and she made her mark, etc.

Sandehouse testified in substance that he was present upon the occasion and saw deceased take the papers from under the mattress and hand them to defendant in error and heard the same conversation between deceased and defendant in error that his daughter, Cope, testified to.

The testimony of Sandehouse was greatly, if not entirely, discredited by his admission upon cross-examination, unexplained, that he had testified before the County Court upon another hearing of the matters involved; that he was at Knapp's house on Saturday, April 23, 1904, and had not been in her house for about four years prior to that time. His testimony was further weakened by that of Cope, who said that on the trial in the County Court her father testified that he was not at Knapp's house on Friday.

Defendant in error's case rests upon the dis-

credited testimony of Sandehouse, and the testimony of Cope, which seems to us wholly inconsistent with and in direct conflict with the great preponderance of the evidence. According to her account, deceased, who was suddenly stricken with pneumonia, a disease so severe in its attack that she died therefrom in less than four days from that time, who was so sick that she requested the last rites of her church to be administered and who, on the evening before, was unable to undress herself, and who, according to Cope's version of the matter, was giving away her property in the expectation of almost immediate death, was up and around her house on the day of the alleged gift, transacting the common affairs of her home, with her voice strong and very distinct, talking in her ordinary tone and able to do unaided what several of the witnesses testified it was difficult for her to do with help.

It is also significant that the witness, Cope, who had seldom called at the home of deceased, and who lived several blocks away, and was not related to or interested in her should be invited in, just in time to witness so important a matter, while within a few yards of the residence of deceased were several neighbors, who had already assisted her in her illness, and who, although, in almost constant attendance upon her, were not called upon to do such service.

The preponderance of the evidence is clearly against the conditions as described by Cope and Sandehouse, while there are many circumstances shown to have existed that tend to cast suspicion upon the good faith of defendant in error in the transaction.

Annie Shearin, Ellen Kinsella and Mary Freeman, at least two of whom were members of the parish church with which defendant in error was connected, neighbors who lived within a few yards of deceased, testified that she was very sick from the first of her illness and was in bed at all times after her first attack when they saw her (which was quite often); that

she was too sick and weak to engage in conversation and that when they gave her medicine they had to raise her upon her pillow to administer it. Kinsella testified that deceased was not able to talk in her usual manner and was hard to understand; that her speech was not what it was when she was in her usual health and that she was very weak on Friday at one P. M. Freeman testified that after her first attack deceased's mouth was drawn to one side, and both Freeman and Shearin said that deceased was so sick that she paid no attention to anything that was said or done in the room where she was. Dr. Dugan testified that he visited deceased on Friday, the day of the alleged gift; that she had pneumonia and that her condition was such that he made three visits on that day, at morning, noon and evening.

The evidence further disclosed that when defendant in error applied to Benjamin Wedding as a notary public to go to the home of deceased to take the acknowledgment to the deed made by deceased about the same time that the alleged gift was made, and which was afterward set aside by the court, he said to Wedding: "He thought it would not be best for them to go together; that he would go first and Wedding might follow;" that afterward defendant in error came to him and said: "That he did not remember of putting his hand on Mrs. Knapp's to steady it (when she made her mark upon the deed) and that it was not necessary for him, Wedding, to mention that fact" (in giving his testimony).

The evidence further discloses that just prior to the time when it is alleged the gift to defendant in error was made, that defendant in error was very zealous and swift to inform himself of the description of deceased's property and of the legal form of a last will and testament and at the time the alleged gift was made he invited the persons present, except Knight, Cope and Sandehouse, to leave the room and

house, thus leaving himself, Cope and her father alone with deceased at a time when, if a proper legal gift *causa mortis* was to be perfected, not too many, but too few witnesses were likely to be present.

Furthermore, while the evidence is not conclusive upon this subject, it tends strongly to show that defendant in error, by his conduct, prevented a telegram being sent from the home of deceased to her daughter, plaintiff in error, at her home in Winona, Minnesota, advising her of her mother's serious illness; and that in consequence thereof plaintiff in error knew nothing of her mother's illness until after her death.

Upon a consideration of all the evidence we hold that the presumption, which the authorities cited say must be indulged, has not been overcome or rebutted, and that deceased did not give her personal property to defendant in error with deliberation and of her own free will.

The decree was wrong and is reversed with directions to the Circuit Court to enter a decree setting aside the gift of the personal property to the defendant in error.

*Reversed and remanded with directions.*