FRED A. YESS *et al.* Appellants, *vs.* JOSEPH YESS *et al.* Appellees.

*Opinion filed October 26, 1912.*

1. WILLS—*rule on motion to direct verdict is the same as in a suit at law.* Where a motion is made to direct a verdict upon the issue of undue influence or testamentary capacity in a will contest case, the rule is the same as applies to such a motion in a suit at law, and the party against whom the motion is directed is entitled to the benefit of all the evidence in his favor in its most favorable aspect to him, and of all presumptions that may be reasonably drawn from such evidence.

2. SAME—*what is necessary to place the burden of proof upon devisee standing in a confidential relation.* To place the burden of

proof upon one standing in a confidential relation to the testator or testatrix to show the absence of fraud or undue influence in the making of the will, such person must be shown to have been directly connected in some manner with the making of the will.

3. SAME—*what facts should go to jury upon question of undue influence.* The facts that the only son of the testatrix occupied a fiduciary relation to her and was the active party in having the will prepared; that he procured its preparation by his agent, who was a stranger to the testatrix; that he and the agent, alone, were present with her when the will was drawn; that she was the dependent party and he the dominant one, and that he profited substantially by the will, tend to show the exercise of undue influence and are sufficient to go to the jury on that issue.

APPEAL from the Circuit Court of Peoria county; the Hon. LESLIE D. PUTERBAUGH, Judge, presiding.

EDWARD D. McCABE, JAMES A. CAMERON, and DAN R. SHEEN, (C. R. BIRKETT, of counsel,) for appellants.

JOSEPH W. MAPLE, (LOUIS F. MEEK, guardian *ad litem,*) for appellees.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The appellants filed their bill in the circuit court of Peoria county contesting the will of Theresa Yess on the grounds of mental incapacity and undue influence of the appellee Joseph Yess. Upon the trial the court withdrew from the consideration of the jury the issue as to undue influence, and a verdict having been returned in favor of the appellees, a decree was rendered dismissing the bill.

The evidence as to the testatrix's mental capacity is such that the verdict ought not to be set aside as contrary to the evidence, and this is substantially conceded by the appellants. The question of undue influence only remains.

The will was executed on February 7, 1908. The testatrix was then eighty-three years old. She died on March

1, 1910, leaving property amounting to about $17,000, all personal, except a homestead valued at $1100. Her husband, August Yess, had died intestate in 1905, leaving a considerable estate, from which the testatrix had received the property she owned at her death. Her heirs were her son, Joseph, her daughter, Mary Dell, four children of her deceased son William, two sons of her deceased son John and a son of her deceased son Charles. Her will, after directing the payment of her debts and funeral expenses, gave legacies of $150 to Charles' son and $12.50 each to John's sons, named Joseph executor without bond and with power to sell real estate, and divided the residue of the estate into four parts, devising one-fourth to Joseph, one-fourth to Mary Dell, one-fourth to William's children and one-fourth to Amanda Yess Bontz, a daughter, who died before the testatrix, without children, and whose devise therefore lapsed. The complainants, who are also appellants, were Charles' and John's sons, and the other heirs were made defendants. For about fifteen years before her death the testatrix lived in a small four-room house on First street, in the city of Peoria. After her husband's death she occupied it alone, except that at times she had with her the daughter Amanda, mentioned in the will, who was insane and was in an insane asylum when not with her mother. The testatrix and her husband had formerly lived on his farm in Jubilee township, in Peoria county. After the death of August Yess, the husband, in 1905, their oldest son, Charles, was appointed administrator of the estate, and he also had charge of the business of his mother, the testatrix. He lived only a few months, however, and upon his death the two remaining sons, William and Joseph, were appointed administrators. Very soon after, on April 11, 1906, the testatrix made a will, which was introduced in evidence, and on April 29, 1907, she executed a power of attorney to William Yess, authorizing him to transact business in her name in the management of her

property. William died in less than two years after his appointment as administrator, and thereupon the will now under consideration was executed, and at the same time a power of attorney to Joseph, the only surviving son, to transact business for the testatrix. The latter will differed from the former only in the omission of a provision for the erection of a monument, which had become unnecessary by reason of the erection of the monument; the omission of William as executor; the devise of one-fourth of the residue to William's children instead of to William, and the giving of a power of sale to the executor. The will was written by Peter Auten, a banker of Princeville, a town in Peoria county twenty miles from the city of Peoria. He was a stranger to the testatrix, and came from Princeville to Peoria at the request of Joseph Yess for the purpose of drawing the will. William Yess and Joseph Yess both lived in Akron township, near Princeville, and Peter Auten was Joseph's banker. He had assisted in the settlement of August Yess' estate and in keeping the accounts, and had also assisted Joseph in his individual business. Through his connection with her husband's estate he was acquainted with the testatrix's property and the state of her business. Upon their arrival in Peoria, Auten and Joseph went to the Interstate Bank, where they got the former will from a safe deposit box which had been rented by William and Joseph as administrators and which after William's death had remained in Joseph's control and in which their mother's papers were also kept. They went to Mrs. Yess' house, where Joseph introduced Auten, with whom Mrs. Yess had not before been acquainted. The former will was opened and read and the changes Mrs. Yess desired to make were discussed between Mrs. Yess and Auten. He asked her particularly about the legacies and the amount of each, and explained to her some of the terms used and the effect of various provisions of the will. Joseph did not take part in the discussion, though he was

255 — 27

there and was occasionally called upon to explain something, since Auten did not speak German, though he understood it fairly well, and Mrs. Yess did not speak English fluently. Amanda, the insane daughter, was there and no one else was present. The will was written there by Auten and was read over and explained to Mrs. Yess. George Boucher, who had a grocery store two blocks away, was called in as a witness and the will was executed in the presence of Boucher and Auten. At the same time Mrs. Yess executed a power of attorney, written on a blank form which Auten had brought with him, conferring authority upon Joseph to look after and manage her property.

Where a motion is made to direct the verdict upon the trial of an issue out of chancery as to the validity of a will, the practice is the same as in actions at law. The party against whom the motion is directed is entitled to the benefit of all the evidence in his favor in its most favorable aspect to him, and of all presumptions that may be reasonably drawn from such evidence. All contradictory evidence or explanatory circumstances must be rejected. A fiduciary relation existed between the testatrix and her son Joseph. William had charge of the management of her affairs, and after his death she was dependent upon Joseph. He had charge of her notes, securities and other papers, including the will which she had previously made. It is evident that she was a woman of no business experience or capacity, unacquainted with the extent and value of her property, and that she was obliged to have some person to whom she could go for advice and assistance. Joseph was that person, and her confidence in him was such that, at the same time the will was made, she gave him a power of attorney placing him in full control of her affairs. It is true that the rule that a gift to one sustaining a fiduciary relation to the donor is *prima facie* voidable, and that the burden of showing good faith, fairness and the absence of undue influence is upon the donee, does not apply to wills,

(*Michael* v. *Marshall,* 201 Ill. 70,) nor does it ordinarily apply to gifts from a parent to a child. To place the burden of proof upon one standing in a confidential relation to show the absence of fraud or undue influence in the making of a will, such person must be shown to have been directly connected in some manner with the making of the will. *In re will of Barry,* 219 Ill. 391.

The facts that Joseph Yess, who occupied a fiduciary relation to his mother, was the active agent in having the will prepared; that he procured its preparation by his agent, who was a stranger to his mother; that he and his agent, alone, were present with her when it was drawn; that she was the dependent party and he the dominant party, and that he profited substantially by the will, are circumstances tending to show the exercise of undue influence. (*Weston* v. *Teufel,* 213 Ill. 291; *Leonard* v. *Burtle,* 226 id. 422; *England* v. *Fawbush,* 204 id. 384.) Though the provision for Joseph in this will is the same as in the former will, there is evidence that the former will also was prepared at the instance of William and Joseph at a lawyer's office, and that they, alone, were present with the lawyer and their mother when it was explained to her and executed. It is not intended to intimate whether or not these circumstances have been explained or modified by other circumstances shown by the evidence. That is a question to be determined by the jury from a consideration of all the evidence and by the court upon a motion for a new trial. In reviewing the action of the court complained of, we do not weigh the evidence,—we can look only at that which is favorable to the appellants. From that view the issue of undue influence should have been submitted to the jury, and the court erred in withdrawing it from their consideration.

The decree is reversed and the cause remanded.

*Reversed and remanded.*