(No. 12817.—Decree modified and affirmed.)

NOYES F. WATERMAN, Appellant, *vs.* GEORGE E. HALL *et al.* Appellees.

*Opinion filed February 18, 1920.*

1. WILLS—*undue influence must have operated at time will was executed—circumstantial evidence.* Undue influence may be established by circumstantial evidence, but to invalidate a will the evidence must be such as to show that the influence was operative at the time the will was executed, and the circumstances must not only be consistent with the exercise of undue influence but they must also be inconsistent with the absence of such influence.

2. SAME—*undue influence must overcome testator's will.* Advice, argument or persuasion will not vitiate a will made freely and from conviction although such will would not have been made but for such advice, but the influence which will invalidate a will must be such as to destroy the freedom of the testator's will and make his act more the offspring of another's will than of his own.

3. SAME—*what tends to show absence of undue influence.* The fact that the person charged with having procured the execution of a will by the exercise of undue influence cannot derive any benefit from the will is a strong circumstance tending to show the absence of undue influence.

4. SAME—*proof of undue influence in other transactions is immaterial.* In the absence of evidence showing the exercise of undue influence in the execution of the will, proof of the exercise of undue influence in other transactions is immaterial.

5. SAME—*what newly discovered evidence is not ground for a new trial to contest will.* Where the execution of the will is admitted in a will contest case and the only questions at issue are the mental capacity of the testator and the exercise of undue influence, newly discovered evidence tending to show only that the will was not executed on the date which it bears and was not then attested has no tendency to prove the issues and is not ground for new trial.

6. SAME—*when the cross-complainant should not be made an original complainant by decree.* Where the original bill seeks to set aside a will and certain deeds executed by the testator, a defendant corporation which has filed a cross-bill insisting that the will shall stand but praying that the deeds be set aside should not be made a party complainant to the original bill by a decree which sustains the will and dismisses the original bill as to the original complainant, as said defendant may prosecute its cross-bill and get all the relief it would obtain under the original bill.

APPEAL from the Circuit Court of Cook county; the Hon. M. W. PINCKNEY, Judge, presiding.

SHEPARD, McCORMICK, KIRKLAND, PATTERSON & FLEMING, (PERRY S. PATTERSON, and DWIGHT P. GREEN, of counsel,) for appellant.

WILSON, MOORE & McILVAINE, (N. G. MOORE, of counsel,) for appellees.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

Arba N. Waterman died on March 16, 1917. On July 21, 1909, he had signed an instrument which purported to be his will and was probated as such on July 25, 1917, in the probate court of Cook county. It consisted of eleven paragraphs, the first of which gave all his property to his wife and the tenth nominated her as executrix without bond. All the other paragraphs were based on the condition that

291 — 20

the testator survived his wife, and paragraphs 2 to 8, inclusive, provided for the payment in that event of various legacies to different individuals, schools and other public institutions. Subject to all the other provisions of the will, the ninth paragraph devised the residue of the estate to the Chicago Avenue Church, located at the corner of Chicago and LaSalle avenues, founded by Dwight L. Moody. Paragraph 11 nominated Louis C. Ehle executor in case of the death of the testator's wife or her inability to act. Afterward, on May 8, 1916, six deeds were filed for record purporting to have been executed by Arba N. Waterman on June 2, 1915, conveying to Carleton Hudson a large amount of real estate. The testator's wife died in his lifetime, before the execution of these deeds. He had no children and his only heir was his half-brother, Noyes F. Waterman. On October 25, 1917, Noyes F. Waterman filed a bill to contest the will on the ground of mental incapacity of the testator and the undue influence of Carleton Hudson, making all the legatees named in the will and the residuary devisee, the Moody church, defendants. The bill charged that the deeds to Hudson were fraudulent and he was made a defendant to the bill, which prayed that not only the will, but the deeds also, should be set aside. Answers were filed by various defendants denying the allegation of unsoundness of mind and undue influence, and the Moody church also filed a cross-bill praying for an injunction against the prosecution of other suits to set aside the will which had been begun by some of the parties defendant in the present suit, claiming under an alleged prior will of Arba N. Waterman, and for a decree setting aside the deeds to Hudson. The court ordered an issue to be submitted to the jury whether the instrument in question was the last will and testament of Arba N. Waterman. During the trial the contestant's counsel stated that he did not rely on want of mental capacity of Judge Waterman as a ground for setting aside the will, but that his mental and physical condi-

tion was material on the question of undue influence. At the close of the contestant's evidence the court directed a verdict in favor of the proponents of the will. After overruling a motion for a new trial the court entered a decree adjudging the instrument in question to be the last will and testament of Arba N. Waterman, dismissing the bill as to Noyes F. Waterman but substituting the Moody church as complainant and making Noyes F. Waterman defendant, authorizing the Moody church to prosecute the bill, and enjoining those defendants to the bill who had filed another bill to set aside the will from prosecuting that suit. Noyes F. Waterman, the original complainant, has appealed.

The testator was a lawyer of high standing, who had been a judge of the circuit and of the Appellate Courts for many years but had returned to the practice of law several years before the date of the execution of the will. He was then about seventy-five years old. He had been since his retirement from his judicial office in the active practice of his profession, acting as counselor and adviser of other persons in matters of business, appearing in trial and appellate courts and taking part in the trial of litigated cases. He was the executor of a will and trustee of an estate and was a member of the public library board. Besides these engagements and the business of his clients he had a very considerable property of his own and was the owner of a good deal of real estate which claimed his attention. He received and made payments, made and indorsed checks, made charges, kept a set of accounts and was in the entire management of his business. He was the dean of a law school, delivered courses of lectures to the students and wrote upon legal and literary subjects. On this record no question is or can be made of his mental capacity, but it is insisted that the evidence shows his mental powers were declining and that his condition was such as to make him more susceptible to undue influence than he would have been when his mental faculties were at their full strength.

Before the date of the will and during the latter part of his life Judge Waterman suffered at times from intense headaches, which temporarily incapacitated him from work, and it may be conceded that his physical and mental powers began to be undermined. His associates and competitors in the profession and the judges before whom he appeared observed a decrease in his ability to prepare his cases for consideration and present them effectively to the court. He was somewhat forgetful. In giving his course of lectures at the law school he sometimes repeated a lecture, apparently without knowing that he had given it previously. In dictating he sometimes became confused, would repeat and sometimes would have to stop. Carleton Hudson was thirty years younger than Judge Waterman. He appears to have become acquainted with him a few years before the execution of the will through his connection with a litigation between Francis A. Riddle and the West Park board, in which Judge Waterman represented Riddle and in which a judgment was rendered in favor of Riddle for $27,000. Hudson obtained an assignment of this judgment and thereupon began a litigation against Riddle, in which Judge Waterman represented Hudson against his former client. Some time before the execution of the will Hudson moved into Judge Waterman's office, and from that time on the relations between them were very close. Hudson was in constant attendance upon Waterman, who appeared to rely upon him more and more, and the evidence shows a very intimate and confidential relation between them. In his office and in court, in consultation with clients, in conferences with other lawyers and in arguments of cases Hudson was always present. From the evidence it must be inferred that Judge Waterman came to depend very much upon Hudson and did very little without consulting him and having his approval and consent, even deferring to him in the conduct of his legal business and adopting his suggestions in his arguments and proceedings in court. Two years after

the execution of the will Hudson procured Judge Waterman to execute a written contract agreeing to sell six separate tracts of real estate in Chicago at any time within five years of the date of the agreement at certain stipulated prices and to take in payment Hudson's unsecured notes, payable ten years after date, with five per cent interest.

The evidence in this record tends very strongly to show the existence of a confidential relation between the testator and Hudson and a dominating influence of the latter over the mind of the testator. It is not enough, however, to show the existence of the relation and of the influence. It must also be shown that the influence was operating on the mind of the testator at the time the will was executed and that the execution of the will was the result of such influence and not of the free will of the testator. Undue influence may be established by circumstantial evidence, but the evidence must be such as to show that the influence was operative at the time of the transaction sought to be impeached. (*Larabee* v. *Larabee*, 240 Ill. 576; *Sears* v. *Vaughan*, 230 id. 572; *Wickes* v. *Walden*, 228 id. 56; *Trubey* v. *Richardson*, 224 id. 136; *In re Will of Barry*, 219 id. 391.) Advice, argument or persuasion will not vitiate a will made freely and from conviction, though such will would not have been made but for such advice. (*Roe* v. *Taylor*, 45 Ill. 485.) The influence which will have the effect to avoid a will must be such as to destroy the freedom of the testator's will and make his act more the offspring of another's will than his own. (*Allmon* v. *Pigg*, 82 Ill. 149; *Woodman* v. *Illinois Trust and Savings Bank*, 211 id. 578.) It is not enough that the circumstances attending the execution of the will are consistent with the exercise of undue influence. They must be inconsistent with the absence of such influence. (*Compher* v. *Browning*, 219 Ill. 429.) The fact that the person charged with having procured the execution of the will by the exercise of undue influence cannot derive any benefit from the will is a strong

circumstance to show the absence of undue influence. *Harp v. Parr,* 168 Ill. 459.

The subscribing witnesses to the will were Carleton Hudson and Julia M. Johnston, a stenographer employed in Judge Waterman's office. They did not testify on the trial but the certificate of their evidence in the probate court was introduced, from which, alone, the circumstances of the preparation and execution of the will are made known. Miss Johnston did not remember positively who prepared the will, though she thought that she did. She did not recall whether it was dictated to her. She merely testified that she, Judge Waterman and Hudson were present; that Judge Waterman signed the will and requested her to sign as a witness. Hudson testified that he signed the will as a witness at Judge Waterman's request; that Judge Waterman, Miss Johnston and himself were the only persons present, and that he made no suggestions as to the will, except that in answer to the question, "Did you make any suggestion as to making the Moody church a beneficiary under this will?" he said Judge Waterman asked him about what he would do if he were situated the way Judge Waterman was and he told him what he would do, and states that he thinks the will was written in longhand first by the judge. He further said that Judge Waterman wanted to make him executor, but he declined and suggested Ehle or somebody else.

There is no circumstance in all the evidence that indicates that Hudson exercised any influence over Waterman as to what should go into his will. No reason appears why Hudson should have induced the making of such a will. There was no possibility of his profiting by it, and so far as appears he was not acquainted with any of the legatees in the will except the residuary devisee,—the Moody church. He was a regular attendant at that church but not a member of it, and there is no reason to suppose that his relation to the church was such that he would endeavor to

overcome Judge Waterman's mind and induce him, contrary to his own inclination, to give his property to the church. It was a natural thing that the testator should give all his property to his wife, since he had no children or any near relatives except the complainant, with whom his relations were not cordial. Among the legacies given in case of his wife's death was one of $400 yearly for the support of the appellant, to be used in the discretion of the executor; another of $600 annually to be paid to his wife's brother, as well as the household furniture. The other gifts were $2000 to an aunt and $250 each to twenty-three different persons who had been friends of himself or his wife, or both; to three schools in Vermont, from which State he had come; to a public library in Greensboro, Vermont, and $1000 to the Chicago Home for Incurables. These beneficiaries were persons or institutions with whom Hudson had no connection and with whom he was not even acquainted, and there is not the slightest indication in the evidence of any reason why he should endeavor to have a legacy in favor of any one of them introduced into Judge Waterman's will.

There were errors in the names of some of the legatees named in the will, but they were such as are readily explainable as mistakes of the stenographers or attributable to slips of memory on the part of the testator.

Judge Waterman's wife was a Swedenborgian and he belonged to no church, though he is said to have stated that he inclined to Buddhism. He is not shown to have had any connection with the Moody church, though in the transcript of Hudson's testimony in the probate court it appears that Judge Waterman used to make donations to it occasionally. What his reason may have been for making this church his residuary devisee does not appear and is not necessary to determine, so long as he did it. No reason appears why Hudson should have exercised any influence to induce him to do so, and there is no evidence that he did.

The suggestion that Hudson intended at the time the will was drawn to get Waterman's estate by other means and that the will was merely intended to conceal his real intentions and to place Waterman's estate in the friendly hands of the church, which would probably make little opposition to the consummation of his scheme to obtain Waterman's property by means of the contract obtained two years later and the deeds for Waterman's real estate executed by virtue of that contract, seems too fanciful to be accepted without some evidence to show that such was his plan. The facts in evidence do not furnish a basis for such a conclusion. Whatever may have been the relation between the testator and Hudson and whatever influence he might have been able to exert if he had wished to do so, there is nothing in the record tending to show that any such influence was exerted, and this being the only issue in the case, the court properly instructed the jury to find the instrument was the will of the testator.

The appellant offered evidence, which the court refused to hear, of other transactions in which it is claimed that Hudson improperly influenced Waterman in his professional conduct and deceived and betrayed women who had confided their property and business to him, but the evidence was properly rejected. No matter what may have been the conduct of Hudson in other transactions or his influence in general or in specific transactions over the mind of Judge Waterman, the latter's transactions cannot be overturned and set aside except by evidence of the exercise of undue influence in the particular transaction. In the absence of such evidence, proof of the exercise of undue influence in other cases is immaterial.

A motion for a new trial was made on the ground of newly discovered evidence, and the claim is made that Sol Rubin would testify that he was present when the will was signed,—not on the date which it bears but in August, 1915, and it was not then signed by the witnesses. This

evidence would have no tendency to prove the issue,—to show the exercise of undue influence by Hudson in the execution of the will. On the pleadings the execution of the will was admitted, and the only questions at issue were the mental capacity of the testator and the undue influence of Carleton Hudson. The newly discovered evidence could have no bearing on these issues, and the motion for a new trial was properly overruled for this reason.

The enjoining by the final decree in this case of the further prosecution of the case brought by George E. Hall and others who were parties to this suit, for the purpose of contesting the will, is assigned as error. If the parties enjoined are dissatisfied with the decree in this respect they have the right to have it reviewed, but the injunction does not apply to the appellant and he cannot complain.

The decree dismissed the bill as to the appellant and then substituted the Moody church as complainant in the bill and made the appellant a defendant. The Moody church had filed a cross-bill, in which it sought a part of the same relief,—that is, the cancellation of the deeds to Hudson. There is no reason why it may not prosecute its cross-bill and get all the relief it could obtain under the original bill. The original bill sought to set aside the will and the deeds and the appellant was the only complainant. The Moody church does not want to prosecute that bill, for it insists that the will shall stand, but wants the deeds set aside and filed a cross-bill for that purpose. The litigation, as far as the appellant is concerned, is at an end. His suit should be dismissed. This will leave the cross-bill of the Moody church pending, on which it can obtain whatever relief it may be entitled to.

The decree will be modified by striking out that part which authorizes the substitution of the Moody church as complainant in the original bill and makes the appellant a defendant to the original bill, and in all other respects the decree will be affirmed.       *Decree affirmed as modified.*