(No. 16738.—Reversed and remanded.)
J. Edward Cunningham, Appellee, *vs.* George F. Dorwart, Appellant.

*Opinion filed June 18, 1925.*

1. Wills—*what undue influence will invalidate will.* Undue influence which will invalidate a will must be such as to deprive the testator of free agency or destroy the freedom of the testator's will and render it more the will of another than his own, it must be directly connected with the execution of the instrument, must be operative at the time the will is made, and must be a species of fraud; and mere advice or persuasion, or influence resulting from affection, will not vitiate a will freely and understandingly made.

2. Same—*existence of a confidential relation does not, alone, create presumption of undue influence.* The mere existence of a confidential relation does not create a presumption of the exercise of undue influence in the execution of a will in favor of the fiduciary, but to create the presumption in such case it must be shown that the relation was used to procure the will.

3. Same—*burden is on contestant to prove charge of undue influence.* The burden is on the contestant to prove his charge that the will was the result of undue influence of the chief beneficiary, and proof, simply, that a fiduciary relation existed between the latter and the testatrix is not ground for inferring undue influence.

Appeal from the Circuit Court of Morgan county; the Hon. E. S. Smith, Judge, presiding.

Owen P. Thompson, for appellant.

F. R. Wiley, (H. H. Morey, of counsel,) for appellee.

Mr. Justice Farmer delivered the opinion of the court:

The bill in this case was filed to contest a will. The testatrix was Mary L. Cunningham. She executed her will January 15, 1920, and died September 14, 1924, aged about seventy years. She had been married, but her husband did not live long and she had been a widow many years. J. Edward Cunningham, her only child and heir, survived her. By her will she gave her son $3000, to be paid to him within one year after her death. The balance of her

estate, after the payment of debts and funeral expenses, she gave to her brother, George F. Dorwart, appellant. After the will was admitted to probate, the son, Edward, filed this bill to contest and set aside the will and its probate. The bill alleged the testatrix was at the time the will was made, and for many years prior and subsequent thereto had been, mentally incompetent to make a disposition of her estate by will; that her brother, George F. Dorwart, principal legatee, by fraudulent practices, falsehoods, misrepresentations and undue influence caused the execution of the will; that Dorwart was dominant and strong-minded; that testatrix was under his dominion, control and influence, and that he was active in the execution of the will. Dorwart answered the bill, denying its allegations. Issues were submitted to the jury whether Mary L. Cunningham was at the time of making the will of sound and disposing mind and memory and whether any undue influence was exercised over her which caused her to make the will. After hearing the evidence the jury returned a verdict finding the will was not the last will and testament of Mary L. Cunningham. In answer to special findings submitted on motion of contestant, the jury found testatrix was of sound and disposing mind and memory at the time she executed the will, and further found that she was under undue influence that resulted in her making the will. A motion for a new trial was made by proponent and overruled and a decree was entered setting aside the will, and proponent has appealed.

Proponent, George F. Dorwart, and his sister, the testatrix, had for thirty or more years prior to the time the will was made, conducted a grocery store in Jacksonville, Illinois, as equal partners. For a long time they lived in the upper story of the building their grocery store was conducted in. When they began the business contestant was a young child and lived with his mother and her brother, who was a bachelor. When contestant grew to manhood he

married and left the home of his mother. Testatrix and her brother from time to time purchased inexpensive property from the profits of their grocery business, and title was taken in the name of the brother and sister to all property so purchased. Their bank account was in their joint names and neither of them ever kept a separate bank account. About 1903 they sold their grocery store and purchased a residence in Jacksonville, to which they moved and where they resided at the time of testatrix's death. Their partnership relations in owning and managing their properties, renting them and collecting rents, continued as they had before they sold the grocery store. There was no great difference in their ages. Proponent was most active in the management of the business of renting and collecting rents and testatrix kept house. Sometimes, in the absence of proponent or when it was convenient, testatrix would collect rents. Their relations were always pleasant, and there is no evidence of any differences between them on account of property or anything else. On the 14th of January, 1920, the brother and sister went together to the office of the attorney who had been advising them about their property and business for some years and told him they each wanted to make a will in favor of the other. Testatrix said she wanted to give her son $3000, to be paid him within a year after her death, and wanted to give the remainder of her estate to her brother. Proponent said he wanted to make a will giving $3000 to brothers and sisters and the remainder of his estate he wanted to give to testatrix. After taking a memorandum of the names of persons to whom property was to be given, they left the attorney's office and he afterwards prepared the two wills. The next day they returned to the attorney's office and executed the wills. Neither was in the room where the other executed his or her will.

The total value of the partnership property was approximately $60,000. The proof showed the testatrix was an

intelligent woman, of sound mind and many years of business experience. The jury found she was of sound mind and disposing memory at the time she made the will, and this finding is not disputed by contestant.

Appellant contends the evidence is wholly insufficient to justify setting aside the will on the ground of undue influence; that there was no evidence that proponent exercised any undue influence over testatrix at any time or that any such influence was operating at the time the will was made; that there is no evidence of coercion, restraint, duress, domination, or of any wrongful act of proponent over testatrix during all the years they lived together and conducted their partnership business, down to the time of the death of testatrix. Appellant also contends the court erred in giving instructions for contestant and refusing instructions for proponent. Appellee contends that the evidence on the subject of undue influence supports the verdict and decree, and that no other question is to be considered in the decision of the case.

We are of opinion the evidence was not sufficient to warrant the verdict and decree and that they are contrary to the manifest weight of the testimony. The proof shows testatrix was a woman of intelligence and business experience. By the efforts and co-operation of herself and appellant they accumulated considerable property. They were many years in doing this. During all that time they worked in harmony, and, so far as the proof shows, their relations were amicable and there were no bickerings or disagreements. They consulted and advised with each other about investments. To all appearances they were considerate of and devoted to each other. Appellant was a bachelor and younger than testatrix. His hearing was defective, and when he was called to the telephone by persons wanting to talk to him about business matters, testatrix would answer the telephone and make an appointment for him to meet the party wanting to talk to him. Testatrix had pneu-

monia in 1917, and during the later years of her life her health was not good and she was not as strong as formerly. She and appellant spent four or five winters in the South. The arrangements for railroad tickets for these trips were usually made by testatrix, because, as she said, appellant could not hear well. She enjoyed these trips with appellant, and on her return would tell her friends where they had been and how they enjoyed the trip. There is an entire absence of testimony to indicate that testatrix was subject to the dominance and control of appellant.

Appellee argues that a fiduciary relation existed between the parties; that appellant was active in procuring the preparation of the will, and the will was properly set aside on that ground. The only activity of appellant shown by the proof is that he and testatrix went together to the office of the attorney who had transacted business for them for some years and each said they wanted to make their wills. Testatrix said she wanted to give her son $3000 and the remainder of her estate to appellant. Appellant said that he wanted to give his brothers and sisters $3000 and the remainder of his estate to testatrix. The attorney took the necessary memoranda and they left his office. He prepared the wills and they returned next day to his office. The wills were read, and they said that was what they wanted. Each one executed the will in the attorney's office but in separate rooms of the office. Neither one was present in the room when the other executed his or her will. There is no evidence of any other word or act of appellant in connection with making the will by testatrix. No proof justifies an inference that testatrix was in any way constrained, dominated or influenced to make the will by appellant.

Much importance is attached by appellee to proof that appellant principally managed the properties he and testatrix owned, but that circumstance would have to be supplemented by proof of other acts and conduct to warrant a conclusion that appellant dominated testatrix or that she

was submissive to his control. Mrs. Miller testified for appellee that in July, 1919, she took her grandchildren with her when she attended a missionary meeting at testatrix's home; that testatrix spoke of the love of mothers for their grandchildren and the pleasure of being with them. Testatrix said her grandchildren were in Springfield and were not able to visit her very often, and she herself did not visit but would be pleased to see them often. Her eyes filled with tears and she left the room. She later broke down, moaned, shook her head but said nothing. This testimony shows nothing more than that testatrix loved her grandchildren. There is no proof that appellant was in any way responsible for her not visiting her grandchildren or their not visiting her, or that appellant was in any manner responsible for appellee and his children not visiting testatrix oftener or of her not visiting them. Appellee was of sound mind and had a right to dispose of her estate as she pleased. So far as disclosed by the testimony, the will disposed of her property as she desired. The inference is warranted that she and appellant had talked the matter over before they went to the lawyer's office and had agreed that they would make mutual wills, each making the other the principal beneficiary, but there is no proof to warrant the inference that testatrix was acting under the influence and control of appellant in making a will which did not dispose of her estate in the manner she desired to dispose of it. Undue influence which will invalidate a will must be such as to deprive the testator of free agency. Advice or persuasion will not vitiate a will freely and understandingly made. The influence to avoid a will must be such as to destroy the freedom of the testator's will and render it more the will of another than his own. It must be directly connected with the execution of the instrument and be operating at the time the will is made, producing a perversion of the mind that made the will, and must be a species of fraud. The influence resulting from love and affection

which does not seek to control the will of the testator is not undue influence. *Roe* v. *Taylor,* 45 Ill. 485; *Yoe* v. *McCord,* 74 id. 33; *Rutherford* v. *Morris,* 77 id. 397; *Kimball* v. *Cuddy,* 117 id. 213; *Snell* v. *Weldon,* 239 id. 279; *Larabee* v. *Larabee,* 240 id. 576; *Farmer* v. *Davis,* 289 id. 392; *Waterman* v. *Hall,* 291 id. 304.

Counsel argue that a confidential relation existed between appellant and testatrix; that appellant was the principal beneficiary of the will and was active in procuring its execution, and the law raises the presumption of undue influence. In *Blackhurst* v. *James,* 293 Ill. 11, the court said: "While undue influence may be established by circumstantial evidence, such evidence must show that the influence was operative at the time of the transaction sought to be impeached and was such as to destroy the freedom of the testator's mind. (*Waterman* v. *Hall,* 291 Ill. 304.) The fact that the testator was living at the home of one of the principal beneficiaries under his will at the time it was executed does not tend to prove undue influence. (*Farmer* v. *Davis,* 289 Ill. 392.) Neither does the further fact that the beneficiaries were present at the time the will was executed. (*Brock* v. *Stines,* 258 Ill. 346.) The active participation of one in a fiduciary relation in preparing a will by which he profits substantially and procuring it to be executed are circumstances tending to show the exercise of undue influence. (*Yess* v. *Yess,* 255 Ill. 414.)    *   *   * The existence of a fiduciary relation between a testator and a beneficiary under his will does not raise a presumption of undue influence, as in cases of voluntary conveyance by deed. (*Michael* v. *Marshall,* 201 Ill. 70; *Yess* v. *Yess, supra; Waterman* v. *Hall, supra.*) To place the burden of proof of the absence of undue influence in the making of the will upon a beneficiary sustaining a fiduciary relation to the testator he must be shown to have been directly connected with the making of the will. (*In re will of Barry,* 219 Ill. 391.) The presumption of undue influence

arises not from the fiduciary relation but from the fact that the fiduciary prepared the will. (*Wunderlich* v. *Buerger,* 287 Ill. 440.) The proof of undue influence must not only be consistent with the exercise of the influence but must be inconsistent with its absence.—*Waterman* v. *Hall, supra."* In *Chaney* v. *Baker,* 304 Ill. 362, *Teter* v. *Spooner,* 305 id. 198, *Gregory* v. *Richey,* 307 id. 219, and *Pond* v. *Hollett,* 310 id. 31, the court held the mere existence of a confidential relation does not create a presumption of the exercise of undue influence in the execution of a will in favor of the fiduciary, but to create the presumption in such a case it must be shown that the relation was used for the purpose of procuring the will. See, also, *Yess* v. *Yess, supra,* and *Michael* v. *Marshall, supra.*

Appellant and testatrix were brother and sister. They had lived together many years and it is apparent from the proof were greatly devoted to each other. They had by their joint labor and frugality accumulated considerable property. At no time is it shown by the proof there were any disagreements or quarrels between them. Neither of them attempted to or did dominate the other. Each of them desired to make, and by will did make, the other the principal beneficiary. The only activity of appellant in procuring the will of testatrix shown by the proof is, that he went to the attorney's office with her when directions were given for its preparation and when it was executed. From the testimony there is as much reason for suspicion that testatrix was active in causing appellant to make his will in her favor as there is for suspecting appellant was active in causing her to make her will in his favor. The burden rested on appellee to prove the will was the result of undue influence of appellant. Proof, simply, that a fiduciary relation existed between them is not ground for inferring un- . due influence. *Michael* v. *Marshall, supra.*

The decree is reversed and the cause remanded.

*Reversed and remanded.*